**AEGIS CORPORATION, Plaintiff,**

v.

**Sol GOLDMAN, Alan H. Goldman, Benjamin Lewis, Jack Schwadron, Robert Blum, Julius Shepard and Paul Saffro, Defendants.**

**No. 81 Civ. 3107 (VLB).**

United States District Court, S. D. New York.

Oct. 12, 1981.

13. D.I. 10, Ex. thereto.

Skadden, Arps, Slate, Meagher & Flom, New York City, for Aegis Corp.

Finley, Kumble, Wagner, Heine, Underberg & Casey, New York City, for defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I.

Plaintiff has moved for summary judgment on the second and third claims of the amended complaint. For the reasons set forth in this memorandum order plaintiff's motion is granted with respect to its second claim. I enjoin Goldman, his employees, attorneys, and persons acting in concert with him from using or voting proxies received by Goldman in connection with Aegis' May 8, 1981 annual stockholders' meeting with respect to a motion to increase the size of the board of directors or for any other purpose. Plaintiff's motion for summary judgment on its third claim is denied.

Defendants have cross-moved to dismiss the complaint for failure to state claims on which relief can be granted, or in the alternative to stay this action pending disposition of an action in the Court of Chancery of the State of Delaware. Defendants' motion is denied.

### II.

The following facts are not in dispute.

Aegis is a Delaware corporation with its principal place of business in Florida. There were 10,955,034 shares of Aegis common stock issued and outstanding as of March 18, 1981. The shares were registered pursuant to Section 12 of the Securities Exchange Act of 1934 ("the Act"), 15 U.S.C. § 78e, and are listed for trading on the American Stock Exchange.

Goldman is a citizen of New York with his principal place of business there. As of March 18, 1981 Goldman was the largest shareholder of Aegis owning 807,200 shares, representing 7.4% of the total issued and outstanding. In accordance with requirements promulgated by the Securities and Exchange Commission ("SEC") pursuant to Section 13(d) of the Act, Goldman in September, 1980, filed a Schedule 13D statement. Subsequent to additional purchases of Aegis stock, Goldman filed five amend-

ments to his original Schedule 13D, the last one on May 7, 1981. Goldman stated his intentions with respect to Aegis in his original Schedule 13D:

> Mr. Goldman did not at the time of the purchases described herein, and does not now, seek to control Aegis.

In February, 1981 Goldman's attorney met with Castle Jordan, president and chief executive officer of Aegis, requesting that the size of Aegis' board of directors be increased from seven to eight. Jordan rejected the proposal. From that meeting Goldman learned that Aegis' management would propose a stock option plan ("the plan") whereby officers and employees would be given the right to purchase up to an aggregate of 1,000,000 shares of Aegis common stock. In a March 6, 1981 amendment to his Schedule 13D Goldman stated:

> Mr. Goldman is considering soliciting proxies for one or more nominees that he may propose in opposition to the Board of Directors. Mr. Goldman may or may not seek to gain control of Aegis. ... Mr. Goldman believes that a plan of the nature and size of the one to be proposed by Aegis' Board of Directors is not in the best interests of Aegis' stockholders, and Mr. Goldman has a present intention to solicit proxies in opposition to such plan.

Goldman through legal action in Delaware obtained a list of Aegis shareholders for the purpose of soliciting proxies to oppose the Aegis stock option plan. On March 6, 1981 Goldman filed a Schedule 14B pursuant to Section 14(a) of the Act and Rule 14a–1. In that Schedule 14B Goldman indicated that he "... intend[ed] to solicit proxies against the stock option ... and may solicit proxies for nominees for directors in opposition to management...." In an amendment to the Schedule 14B dated April 2, 1981 Goldman indicated "... that he would not, at this time, solicit proxies for nominees for directors in opposition to the Board of Directors...."

On April 3, 1981 Aegis mailed to its shareholders notice of its annual meeting on May 8, 1981 and its proxy statement sched-

uling three items on the agenda: 1) the election of the board of directors; 2) consideration of the stock option plan proposed by management; and 3) ratification of auditors.

On or about April 12, 1981 Goldman mailed to Aegis shareholders a letter and a proxy statement entitled "In Opposition to the Aegis 1980 Incentive Stock Option Plan."

In the letter Mr. Goldman stressed that he did not seek control of Aegis:

> I am not seeking to gain anything personally from this solicitation of proxies to defeat the 1,000,000 share stock option plan. I am not seeking control of Aegis. I am not even seeking representation on Aegis' Board of Directors. I only wish to protect my investment in Aegis stock.

In the proxy statement Goldman also disclaimed any purpose to seek control of the corporation:

> ... [H]e has determined that he will only solicit proxies to defeat the plan at this time. Accordingly, he is not seeking to gain control of Aegis. Indeed, he is not even seeking the one directorship he originally requested. By focusing on the single issue that he feels most clearly displays the Board's failure to aggressively promote the best interests of Aegis' stockholders, Mr. Goldman is attempting to isolate the contested proposal from the irrelevant and extraneous questions of politics and personalities that usually arise in proxy contests with respect to the election of directors.

Mr. Goldman's proxy statement noted that other matters which would be voted on at the annual meeting were the election of directors and the selection of auditors and stated that "Mr. Goldman takes no position with respect to these matters." The proxy statement set forth that if no instructions were specified, "the proxies will withhold authority with respect to the election of directors and will abstain with respect to the selection of auditors." The proxy statement further asserted that "Mr. Goldman is not aware of any other matters to be con-

sidered at the Meeting. However, if any other matters properly come before the Annual Meeting, the . . . [proxy holders] will have discretionary authority to vote all proxies with respect to such matters in accordance with their judgment."

The form of proxy Mr. Goldman distributed made provision for shareholders to vote for or to withhold authority to vote for the Board of Directors' nominees for directors and to approve, disapprove, or abstain with respect to, the selection of auditors. Neither the form of proxy nor Goldman's proxy solicitation statement contained the names of any other nominees for the board of directors.

One day before the annual shareholder's meeting Goldman filed with the S.E.C. a fifth Schedule 13D amendment. It indicated that he would seek representation on the board of directors:

> . . . Mr. Goldman has changed his intention and has decided that he will seek representation on the Board of Directors. In this connection, on May 6, 1981, Mr. Goldman determined that he would take such actions as he deemed appropriate in order to obtain representation on the Board of Directors. The steps to accomplish this have not yet been determined. . . .

At the shareholder's meeting on May 8, 1981 Goldman introduced two resolutions from the floor: 1) a resolution to increase the number of directors of the corporation from 7 to 15; and 2) a resolution to elect as directors himself, his attorney Donald J. Bezahler, and the other defendants named in this action. He intended to vote in favor of the first resolution his own shares and the proxies he had solicited from other shareholders. He intended to vote in favor of the second resolution only his own shares. If the board had been enlarged and Goldman and his candidates elected, he would have controlled a majority of the newly constituted board.

No notice was given to any shareholders whose proxies had been submitted to Goldman that he planned to vote those proxies to enlarge the board, and that he was seeking control of the corporation.

There was no advance notice to management that Goldman would seek to enlarge the board of directors and nominate his own candidates for the proposed new positions on the board. Thus no candidates were nominated as candidates in opposition to those named by Goldman.

At the shareholders' meeting the chairman ruled that Goldman's resolutions were in violation of law and refused to submit them to a vote of the shareholders.[1]

### III.

On May 21, 1981 Aegis commenced this action, in which it seeks, *inter alia*, a judgment enjoining defendants from using proxies solicited from shareholders of Aegis. Jurisdiction is premised on Section 27 of the Act, 15 U.S.C. § 78aa and 28 U.S.C. §§ 1331(a) and 1332(a).

On June 1, 1981 defendant Goldman brought suit against Aegis and its directors in the Delaware chancery court seeking, *inter alia*, a judgment declaring that Aegis' board of directors consists of 15 directors and that the defendants herein and Donald J. Bezahler are duly elected directors, and enjoining Aegis' directors from excluding the defendants and Bezahler from functioning as directors.

Plaintiff's motion in this action for summary judgment is on its claim that Goldman's attempt to vote the proxies he held to expand the board of directors violated Rule 14a–4, promulgated by the SEC under Section 14 of the Act (Second Claim), and on its claim that defendant Goldman conducted a solicitation of proxies in connection with a proxy contest involving the election of directors without complying with

---

1. Goldman claims that despite the ruling by the chairman, Goldman furnished the Inspectors of Election with ballots before the polls were ordered closed. Goldman claims to have furnished separate ballots for each of his two resolutions, utilizing the proxies only for the first resolution.

The accuracy of this claim need not be resolved at this stage.

the requirements of Section 14 of the Act and the rules and regulations promulgated thereunder, specifically Rule 14a–11. (Third Claim).

Aegis moved in the Delaware court to stay the Delaware action pending determination of Aegis' application here for summary judgment. The Delaware motion has been granted.

## IV.

The complaint alleges that Goldman early on formed a scheme to gain control of Aegis, and that at all times during the proxy solicitation process he intended to do what he ultimately attempted to do: i. e., propose enlargement of the board without notice at the last minute and vote his proxies in favor of that enlargement under the discretionary authority contained in the proxies to vote them with respect to "other matters [which] properly come before the Annual Meeting." Goldman vigorously denies that prior to his proxy solicitation he had conceived any such scheme or had any such intent.

If the existence of such a scheme and the presence of such intent were material with respect to plaintiff's present motion for summary judgment then without more there would be contested issues of material facts which would dictate the denial of summary judgment. Plaintiff argues that for the purpose of its motion it is immaterial whether or not at the time of his proxy solicitation Goldman had formed a scheme with the intent to gain control of Aegis. It asks me to analyze its application for partial summary judgment, with respect to its second and third claim, as if the allegations with respect to intent had been deleted therefrom. In short, although Aegis has not articulated its request in precisely this wise, what it really seeks is summary judgment on the facts conceded by Goldman and no others.

I have considered plaintiff's motion on precisely that basis: whether it is entitled to summary judgment on its second and

third claims on the basis of the facts which Goldman does not dispute.

## V.

*Plaintiff's Second Claim*

■ Plaintiff's second claim asserts, in substance, that Goldman and his nominees were not bona fide nominees, nor were they named in a proxy statement; that the attempt by Goldman to vote the proxies to expand the board so that Goldman's nominees would be virtually automatically elected violated Rule 14a–4.

Section 14(a) of the Act makes it "unlawful for any person . . . in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy . . . in respect of any security . . . registered pursuant to section 78*l* of this title." [2] 15 U.S.C. § 78n(a).

A Senate Report on the abuses that resulted in enactment of the Exchange Act noted the necessity of informing shareholders with respect to the purposes for which their proxies are solicited:

> In order that the stockholder may have adequate knowledge as to the manner in which his interests are being served, it is essential that he be enlightened not only as to the financial condition of the corporation, but also as to the major questions of policy, which are decided at stockholders' meetings. Too often proxies are solicited without explanation to the stockholder of the real nature of the matters for which authority to cast his vote is sought.

S.Rep. No. 73–1455, 73d Cong., 2d Sess. 74 (1934). Thus Section 14(a) was intended to "control the conditions under which proxies may be solicited with a view to preventing the recurrence of abuses which . . . [had] frustrated the free exercise of the voting rights of stockholders." H.R.Rep. No. 1383, 73d Cong., 2d Sess. 14. The Supreme Court has noted that the underlying "purpose of § 14(a) is to prevent management or others

---

**2.** The securities issued by Aegis were registered pursuant to 15 U.S.C. § 78*l*.

from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitations." *J. I. Case Co. v. Borak*, 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964). *Accord, Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 381, 90 S.Ct. 616, 620, 24 L.Ed.2d 593 (1970). S.Rep. No. 1455, 73d Cong., 2d Sess. 77 (1934).

The rules promulgated by the Securities and Exchange Commission provide a detailed regulatory framework with respect to the solicitation and use of proxies. Rule 14a–4, 17 C.F.R. § 240.14a–4, delineates and limits the scope of voting authority which may be conferred by proxy. Rule 14a–4(a)(3) requires that a proxy "identify clearly and impartially each matter or group of related matters intended to be acted upon, whether proposed by the issuer or by security holders." Rule 14a–4(c) provides that a proxy may grant to the proxy holder discretionary authority to vote with respect to certain limited matters not set forth in the proxy:

(c) A proxy may confer discretionary authority to vote with respect to any of the following matters:

(1) Matters which the persons making the solicitation do not know, a reasonable time before the solicitation, are to be presented at the meeting, if a specific statement to that effect is made in the proxy statement or form of proxy;

(2) Approval of the minutes of the prior meeting if such approval does not amount to ratification of the action taken at that meeting;

(3) The election of any person to any office for which a bona fide nominee is named in the proxy statement and such nominee is unable to serve or for good cause will not serve.

(4) Any proposal omitted from the proxy statement and form of proxy pursuant to § 240.14a–8 [Rule 14a–8] or § 204.14a–9 [Rule 14a–9].

(5) Matters incident to the conduct of the meeting.

17 C.F.R. § 240.14a–4(c).

Thus a proxy confers specific authority to vote with respect to the matters specifically designated therein, and it may (but need not) confer discretionary authority to vote with respect to various specified other matters. The categories of matters with respect to which discretionary authority may be conferred are for the most part specifically delineated: approval of minutes [Rule 14a–4(c)(2)]; election of a person to an office if a person nominated for that office and named in the proxy statement is unwilling or unable to serve [Rule 14a–4(c)(3)]; matters pertaining to the conduct of the meeting at which the proxy is to be used [Rule 14a–4(c)(5)]; and, while it is not applicable here, shareholder proposals which corporate management has excluded from its proxy statement or form of proxy on the authority of Rules 14a–8 and 14a–9 [Rule 14a–4(c)(4)]. It also may confer discretionary authority to vote on matters which come up at the meeting but which the proxy solicitor did not know would be presented, provided that the proxy or proxy statement contains a specific statement to that effect [Rule 14a–4(c)(1)].

No voting authority may be conferred by proxy to vote for the election of any person to office if the proxy statement does not set forth the name of a "bona fide nominee" to that office:

No proxy shall confer authority (1) to vote for the election of any person to any office for which a bona fide nominee is not named in the proxy statement . . . A person shall not be deemed to be a bona fide nominee and he shall not be named as such unless he has consented to being named in the proxy statement and to serve if elected.

Rule 14a–4(d), 17 C.F.R. § 240.14a–4(d).

In Goldman's proxy statement he stated that he took no position with respect to the election of the board of directors, and his proxy statement indicated that if shareholders expressed no preference with respect to management's director nominees he would withhold the proxy votes from support of those nominees. He solicited proxies from the clearly articulated premise that

he was not seeking control of the corporation and that he was not seeking to elect directors. The solicitation was on a one-issue basis: to oppose Aegis' proposed stock option plan. While Goldman's proxy statement reserved to the proxy holders discretionary authority to vote with respect to unanticipated matters coming up at the shareholders' meeting, his proxy solicitation statement constituted an undertaking to the shareholders whose proxies he received 1) that he would use those proxies to oppose the stock option plan, and 2) that he would not use the proxies to seek control of the corporation.

On May 7, 1981, the day before the stockholders' meeting, Goldman filed an amendment of Schedule 13D with the S.E.C. which announced that the previous day he had determined that he would seek representation on the board of directors. While according to the Schedule 13D of May 7 the means he would use had not been determined, they became clear the following day.

In the first instance he would use his own votes and the proxies he had solicited to support his own motion to enlarge the board of directors from 7 to 15. Then he would use his own votes to elect his nominees to the newly created vacancies. Goldman did not plan to use the proxies in the second stage not only because they would not be needed there, since there were no nominees in opposition to his own, but also because Rule 14a–4(d) prohibited such use. Since Goldman's proxies named no nominees as candidates for members of Aegis' board of directors, the proxies he held could not have been voted for the election of the candidates (including himself) whom Goldman proposed as nominees for the vacancies he proposed to create: "[n]o proxy shall confer authority (1) to vote for the election of any person to any office for which a bona fide nominee is not named in the proxy statement, . . ." Rule 14a–4(d), 17 C.F.R. § 240.14a–4(d).

Under Goldman's game plan, however, the use of the proxies was crucial to his effort to gain control of the board. The proxy votes were needed to bring about the creation of the vacancies: without the vacancies the second step—i. e., the election by his own votes of his own designees— would never be reached. His two proposals in tandem would have effected a change in control of the corporation by establishing Goldman-selected directors as a majority of the board. Thus for all practical purposes he planned to use the proxies to effect the election of directors.

Although Goldman's two step process has not yet been successful, it is the process which is in question here, not the result. There is pending in Delaware a lawsuit brought by Goldman, where he seeks a judgment mandating the success of his plan and declaring, in ultimate effect, that his nominees have been elected to newly created vacancies and thus that he is in control of Aegis.

Rule 14a–4(d) was promulgated to eliminate a practice of soliciting proxies for the election of directors without making disclosure of the persons who would be nominated and for whom the proxies would be voted. *See* E. R. Aranow & H. A. Einhorn, Proxy Contests for Corporate Control (2d ed. 1968) at 165–66.

Goldman's two step process constituted an election process, and each one of the steps was an integral part of the process. His proposed slate consisted of nominees for the board. Rule 14a–4(d) is violated if a proxy is used to vote for the election of any person for which a nominee is not named in the proxy statement. Goldman did not name any of his proposed directors in his proxy statement as nominees to the Aegis board. The use of the proxies he held in an election process, as Goldman attempted to use them, would violate Rule 14a–4(d).[3]

3. The general counsel of the S.E.C. has submitted a letter in support of plaintiff's application. Letter from Ralph E. Ferrara, Office of the General Counsel, to Judge Vincent L. Broderick (July 21, 1981). He notes Goldman's reliance upon the discretionary authority to vote with respect to unanticipated matters permitted by Rule 14a–4(c)(1) "if a specific statement to that effect is made in the proxy statement or form of proxy." He urges that Rule

In the context of this case the motion to enlarge the board was such an integral part of the two-step process which was designed to bring about the election of Goldman's nominees to the board that the proxies solicited by Goldman, if voted in favor of that motion, would effectively be bringing about the election of persons as directors who had not been designated as "bona fide nominees" in any proxy statement.

■ A proxy solicitor's obligation to disclose is a continuing one. Even if statements in a proxy statement are not misleading when made, they may be rendered false and misleading by subsequent events. Then there is an obligation on the solicitor to correct the statement which has become false and misleading.

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

Rule 14a–9(a), 17 C.F.R. § 240.14a–9(a).

While Goldman may not have had opportunity, between the time he conceived his plan and the time of the shareholders' meeting, to transmit to those who tendered their proxies a statement correcting the statement which had become false and misleading, equity will not permit him to use those proxies for purposes—facilitating the election of directors and a change in control of the corporation—so contrary to the purposes asserted in his proxy statement.

In reaching decision, I have considered the policies underlying the Act as applied to the substance of the transaction. If Goldman's two-step scheme were held to be a method of nominating and electing directors which was technically permissible, circumvention of the S.E.C. Proxy Rules through the application of individual ingenuity by Goldman and others would become the order of the day.

Thus there are three compelling reasons why summary judgment is granted with respect to plaintiff's second claim:

1) because Rule 14a–4 excludes the use of proxies in connection with elections unless a bona fide nominee is named in the proxy or proxy statement;

2) because the proxies were solicited on a basis which clearly excluded their use in connection with the election of directors or an attempt to change control of the corporation.

3) because Goldman's scheme runs counter to the policies underlying Section 14(a) of the Act and the rules and regulations promulgated thereunder.

## VI.

*Plaintiff's Third Claim*

Plaintiff's third claim alleges in substance that defendants engaged in solicitation in connection with a contest involving the election of directors without complying with the requirements of Rule 14a–11, 17 C.F.R. 240.14a–11.

I have at plaintiff's suggestion accepted at face value, for purposes of this motion only, Goldman's position that at the time he solicited proxies he had no intention of engaging in an election contest. If he had no such intention at the time of solicitation, then the proxies were not solicited in connection with a contest involving the election of directors, and compliance with the proxy

14a–4(c)(1) should be so interpreted that it does not authorize the invocation of discretionary authority to vote for proposals made by the proxy solicitor or proxy holder himself. Given the approach I have taken to the issues in-

volved, I have deemed it unnecessary at this time to explore the approach suggested. It may, at any rate, be an approach more appropriately addressed to the S.E.C. itself in the exercise of its rule-making authority.

rules with respect to elections would not have been required.

SO ORDERED.