**In re ANDERSON, CLAYTON SHAREHOLDERS LITIGATION.**

**C.A. 8387 Consolidated.**

Court of Chancery of Delaware, New Castle County.

Submitted: June 2, 1986.
Decided: June 2, 1986.

See also 519 A.2d 669.

---

A. Gilchrist Sparks, III, Lawrence A. Hamermesh, and Edmond D. Johnson, of Morris, Nichols, Arsht & Tunnell, Wilmington, and Dennis J. Block, and Joseph S. Allerhand, of Weil, Gotshal & Manges, New York, Joseph A. Rosenthal, and Kevin Gross, of Morris & Rosenthal, Wilmington, and Stuart D. Wechsler, Robert I. Harwood, and Zachary A. Starr, of Goodkind, Wechsler, Labaton & Rudoff, New York, for plaintiffs.

Charles F. Richards, Jr., Samuel A. Nolen, Thomas A. Beck, Gregory P. Williams, and Nathan B. Ploener, of Richards, Layton & Finger, Wilmington, and Stephen G. Tipps, and Paula M. Desel of Baker & Botts, Houston, Tex., for defendant.

ALLEN, Chancellor.

Plaintiffs in these consolidated cases have moved on an emergency basis for an order enjoining a special meeting of shareholders of Anderson, Clayton & Co. scheduled to be held tomorrow. At that meeting the Company's shareholders are scheduled to vote upon a complex recapitalization plan that would, if approved and implemented,[1] (1) cancel all existing common stock, (2) distribute to each current shareholder, $37 in cash and .1778 shares of new common stock of the Company, (3) issue to a newly formed Employee Stock Ownership Plan ("ESOP") for a consideration of $45 per share (to be borrowed from the Company) 730,202 shares of common stock and (4) split the shares to be issued three for one. The effect of the recapitalization would be to distribute an aggregate of $456 million to current shareholders; to more highly leverage the Company's businesses (a significant portion of which have been sold off over the last six months); to leave the current shareholders with a 75% equity interest in the remaining business and to place a 25% ownership interest of the then smaller company in the ESOP. Importantly, the cash distribution contemplated by the recapitalization will be taxed at capital gains rates and not as ordinary income.

## I.

In three identical complaints plaintiffs, who are shareholders of the Company, complain that the plan is unfair and represents not an attempt to enhance shareholder returns but rather an attempt to entrench existing management and protect them from the possibility of a take-over. At the time the plan of recapitalization was approved by the board in February, 1986 the Company's stock was publicly trading at substantially over $50 per share and it has continued to trade in the fifties at this time. As briefly touched upon later the

1. The Company's board of directors retains the power to abandon the plan even if it is approved by a majority vote of shareholders. *See,* Proxy Statement/Prospectus dated April 22, 1986 at p. 42.

best estimate of the Company's financial advisors with respect to this transaction is that the per share value of the cash and stock consideration offered to shareholders in the recapitalization is between $43 and $47.

On May 27 an earlier motion for a preliminary injunction in this case—to enjoin the effectuation of the recapitalization—was heard. At that time defendants represented to the Court that the recapitalization would in no event be implemented prior to June 10, 1986, thereby giving the Court several additional days to consider the merits of that motion.

A part of defendants' case on that motion was the assertion that the proposed recapitalization was the best available technique to enhance shareholder present returns and longer term values. In that connection, it was asserted that a number of alternatives had been thoughtfully considered by the board before the February, 1986 adoption of the present proposal. Specifically, it was asserted by affidavit that among the alternatives that the Company's investment banker (The First Boston Corporation) had been asked to and did explore was a sale of the entire company. First Boston testified, through affidavit, that it solicited indications of interest from some thirteen firms that it thought of as logical possibilities, but that as a result the Company received no "firm offers."

First Boston opined, as of April 22, 1986, that the recapitalization was fair to the Company's stockholders from a financial point of view, but it expressed no opinion as to the price at which the new common stock to be issued in the recapitalization would trade either initially or thereafter. At the February meeting of the board at which the plan was approved, First Boston, in response to a question from a director, indicated a view that while it was impossible to accurately predict a range of values at which the new stock would trade, one could come up with an estimated range of trading prices between $6 and $10 per .5334 share of new common, (*i.e.*, the part of a share of new common into which each share of old common will, in part, be converted in the recapitalization). This informal statement relating to value was included in the proxy statement.

Thus the best information available to the board when it adopted the plan and the information available to shareholders in the proxy statement, is that the recapitalization, if implemented, would offer between $43 and $47 dollars in value for each share of old common.

## II.

Before plaintiffs' motion to enjoin effectuation of the recapitalization could be decided, plaintiffs on Friday, May 30 filed another motion for a preliminary injunction based upon new developments. It is this motion that is before the Court today. This second motion seeks to enjoin the holding of the June 3 special meeting of shareholders or alternatively requiring the adjourning of such meeting.

The material development upon which plaintiffs' current motion is based is the public announcement on Thursday, May 29 that the investment firms of Bear Stearns & Co. and Gruss & Co. have in the language of a Dow-Jones release "offered to acquire Anderson, Clayton in a cash merger transaction in which all Anderson, Clayton shareholders would recover $54 a share in cash." A letter containing the offer referred to was received by Anderson, Clayton on May 29. It provided in full as follows:

On behalf of a corporation ("Newco") to be formed by Bear, Stearns & Co. Inc. ("Bear Stearns") and Gruss & Company ("Gruss"), we hereby submit an offer (the "Offer") to acquire Anderson, Clayton & Co. (the "Company") in a cash merger transaction (the "Transaction") in which all shareholders of the Company would receive $54 in cash for each share of the Company's common stock owned by them.

As of the date of this letter, we are highly confident of the availability of the

funding necessary to consummate the Transaction in an expeditious manner. In this regard, in addition to the funding to be supplied by Bear Stearns and Gruss, we have an agreement in principle with The Quaker Oats Company which will provide a substantial portion of the remaining funding required for the Transaction by buying Gaines Foods, Inc. [a subsidiary of Anderson, Clayton] upon consummation of the merger. We have also received a serious expression of interest from a major New York commercial bank to provide the balance of the funding required for the Transaction.

In light of the Company's currently pending recapitalization proposal (the "Recapitalization"), we feel it is imperative that we now present to you and the Company's Board of Directors this opportunity for all of the Company's shareholders to receive at this time a substantial cash premium over the $45 per share value which the Company has indicated would be received by such shareholders in the Recapitalization.

Consummation of the Transaction would be subject to abandonment of the Recapitalization, approval of the Company's Board of Directors and shareholders, satisfaction of applicable regulatory requirements, execution of definitive funding agreements, and the execution of mutually acceptable definitive agreements with the Company and with The Quaker Oats Company.

We are prepared to do everything possible to bring the Transaction to a prompt completion and we look forward to meeting with you and the Company's Board promptly to pursue this matter further. We would appreciate hearing from you promptly with respect to the Offer.

■ Citing a number of federal cases holding that it is appropriate to delay action and compel further solicitation of proxies where inadequate disclosure has been found, plaintiffs argue that it is essential that Anderson, Clayton shareholders be given an adequate opportunity to evaluate this new development before being required to vote on the recapitalization. The core of plaintiffs' argument, as I understand it, is that the Bear Stearns "offer" is of enormous significance to shareholders both in voting on the recapitalization itself and in deciding whether or not to seek appraisal. The Company's directors, it is contended, have an obligation—as part of a state-law duty of complete candor, *see, Lynch v. Vickers Energy Corp.*, Del.Supr., 383 A.2d 278 (1977); *Rosenblatt v. Getty Oil Co.*, Del.Supr., 493 A.2d 929 (1985)[2],—to solicit shareholder proxies based upon all presently available material information. On plaintiffs' view moving forward with the presently scheduled meeting, as defendants intend to do, is inconsistent with that duty and thus ought to be enjoined.

■ Assuming the Bear Stearns "offer" is a legitimate indication of serious interest (and there is no basis at this time to conclude that it is not, even considering its conditional nature), it is a development of marked significance to Anderson, Clayton shareholders. Surely the obligation of the board at this time is to explore in good faith an alternative that, if available, would appear to have a significantly greater present value than the recapitalization—at least based upon the best available evidence. *See, Thomas v. Kempner*, Del.Ch., C.A. No. 4138, Marvel, V.C. (March 22, 1973); *Robinson v. Pittsburgh Oil Refining Corp.*, Del.Ch., 126 A. 46, 49 (1924).

**2.** I have been cited to no Delaware case specifically addressing whether the board's fiduciary duty to shareholders to make full disclosure of all material facts encompasses a duty to up-date a proxy solicitation where material developments occur. Such an obligation has been found to exist under federal law. *See Ronson Corporation v. Liquifin Aktiengesellschaft,* D.N.J., 370 F.Supp. 597 (1974); *Aegis Corp. v. Goldman,* S.D.N.Y., 523 F.Supp. 1273 (1981). I need not express an opinion at this time on such a broad principle; for purposes of deciding the present motion I assume that the complete candor requirement of our law reaches the disclosure of clearly material matters arising after circulation of a proxy solicitation.

*Cf., Wilmington Trust Company v. Coulter,* Del.Supr., 200 A.2d 441, 448, 452 (1964).

## III.

A preliminary injunction will issue only when a plaintiff has shown a reasonable likelihood of the merit of his claim, that he is threatened with irreparable injury before final hearing may be held and that the balance of competing equities—including impacts of the granting of the relief upon defendant and the public—tilts in favor of issuing the provisional remedy. *Shields v. Shields,* Del.Ch., 498 A.2d 161 (1985).

■ Despite the force of plaintiffs' principal contention, I will decline to issue the preliminary injunction sought at this time but do so without prejudice to plaintiffs' right to renew this motion hereafter. In short, I see no threat of irreparable injury at this time. To find a threat of irreparable injury would require me to assume that the Anderson, Clayton board will, before effectuating the recapitalization—which it has committed to hold in abeyance until June 10—fail to explore fully, effectively and in good faith the opportunities presented to the shareholders by the late indication of serious interest by Bear Stearns. Nothing in the record I have seen on this motion or the earlier, still pending, application in this case justifies such a conclusion at this time in my opinion.

The Anderson, Clayton board has among its members representatives of substantial shareholders who have no management positions, as well as other respected, experienced businessmen with no apparent conflict of interest. The management members of the board who currently comprise 8 of the board's 16 members, may understandably prefer the recapitalization since it would fairly clearly have the effect of permitting them to remain in office (I say this with no implication that I have yet concluded that such an effect was a principal purpose of the recapitalization). Yet there is insufficient basis on the present record to conclude that the board as a whole is incapable by reason of management's delicate position to function as it is expected to do for the best interests of the shareholders.

The board has authorized discussions with Bear Stearns/Gruss. It has prepared and distributed today a supplemental disclosure document describing the "offer" and has caused the full text of that disclosure to be published in this morning's national editions of the New York Times and Wall Street Journal. It has sent mailgrams to all registered stockholders. Finally, it has extended the time in which proxies may be revoked or voted until 5:00 p.m. Thursday, June 5 and has set up a toll-free phone number to which shareholders may give voting instructions. Thus, with respect to this last minute development, the board appears to be attempting to exercise its powers in a way consistent with its obligation in the circumstances to fully inform the Company's stockholders and to actively explore a new option that may be available to them.

The holding of the meeting and the taking of the vote does not commit the board—assuming that the vote adopts the recapitalization—to implementing the recapitalization. *Compare, Woodward & Lothrop, Inc. v. Schnabel,* D.D.C., 593 F.Supp. 1385, 1394 (1984) (meeting enjoined where material recent developments rendered total mix of proxy information inadequate and where Court determined that merger could be effected immediately following vote). Since the "Continuing Directors" of the Company retain the power to abandon the recapitalization even after its approval by the shareholders, (*see,* Proxy, p. 42) they retain the concomitant of that power—the duty to exercise it for the best interest of the stockholders.

In deciding the pending motion I do not decide that the disclosures made by the supplemental proxy solicitation have been made in circumstances that render the forthcoming vote necessarily a valid one. I cannot now determine—as the circumstances do not afford me the time to consider the matter thoughtfully—whether, despite

what appear to be diligent efforts of defendants, this material information has been disseminated in a way that in fact provides record shareholders (*see, American Hardware Corporation v. Savage Arms Corp.*, Del.Supr., 136 A.2d 690 (1957)) with a reasonable opportunity to vote on the important recapitalization proposal on an informed basis.

For the foregoing reasons, plaintiffs' application for an order enjoining the holding of the June 3, 1986 special meeting of the shareholders of Anderson, Clayton will be denied.

IT IS SO ORDERED.