BERTUCCI'S RESTAURANT CORP.,
a Massachusetts Corporation,
Plaintiff,

v.

NEW CASTLE COUNTY, a political
Subdivision of the State of Delaware,
and New Castle County Department
of Land Use, an agency of New Castle
County, Defendants.

C.A. No. 036–N.

Court of Chancery of Delaware,
New Castle County.

Submitted: Nov. 12, 2003.
Decided: Nov. 21, 2003.

Richard L. Abbott, the Bayard Firm,
Wilmington, Delaware; Shawn P. Tucker,
Duane Morris LLP, Wilmington, Delaware, for the Plaintiff.

Collins J. Seitz, Jr., Max B. Walton,
Scott G. Wilcox, Connolly, Bove, Lodge &
Hutz, Wilmington, Delaware, for the Defendants.

## MEMORANDUM OPINION AND ORDER

LAMB, Vice Chancellor.

### I.

On November 12, 2003, the Court heard argument on the plaintiff's motion for a preliminary injunction. For the reasons explained in this opinion, the court has concluded that no injunctive relief is warranted at this time because the owner has not made a good faith effort to complete the permitting process. However, the motion will be denied without prejudice to its being reasserted later if, after the owner has requested the remaining inspections, the respondent county government should improperly refuse the issuance of a certificate of occupancy.

### II.

This case represents the most recent episode in a running battle between New Castle County and Frank E. Acierno over the development of a new shopping center called the Christiana Town Center ("CTC"), located at the intersection of Route 273 and Main Street near the village of Christiana. In this case, Bertucci's Restaurant Corp., a Massachusetts corporation, seeks mandatory preliminary injunctive relief in the form of an order directing New Castle County to issue a certificate of occupancy ("CO") permitting the operation of a restaurant in a structure built at the new shopping center on which it has a lease. The County and County Department of Land Use respond that the County cannot issue a CO to Bertucci's until the owner, CTC, first obtains a CO relating to the building shell that houses the proposed restaurant. Further, they argue, no CO can issue to the owner at this time because the owner has neither paid *certain* sewer charges due nor asked *the* County to perform certain necessary final inspections relating to the building shell. CTC and Acierno did not join the action as parties and have not sought to intervene, although their regular counsel appears on behalf of Bertucci's.

The posture in which this motion for preliminary injunction arises is, itself, a by-product of the state of hostilities between Acierno and the County. The County's oral decision to refuse a request for a CO came on Friday, October 31, 2003. Counsel, acting for Bertucci's, then hastily prepared a verified complaint and accompanying documents seeking preliminary and permanent injunctive relief and filed those papers on Tuesday morning, November 4, 2003. The letter from the Department of Land Use giving its reasons for denying a CO to CTC, however, was not sent until Wednesday, November 5, 2003. A second letter explaining the reasons for denying Bertucci's request for a temporary CO is dated November 10, 2003.

During the afternoon of November 4, the court held a hearing on the request to schedule expedited proceedings. Based on representations that the County had positively misled Bertucci's with respect to its ability to open for business, the court agreed to schedule a preliminary injunction hearing for November 12, 2003. Discovery and briefing took place in the week leading up to the hearing. It is fair to say, however, that the structure of Bertucci's argument presented on November 12, 2003, differed significantly from that which moved the court to schedule the proceeding in the first place. In particular, the claim for equitable estoppel–i.e. that the County had misled Bertucci's–fell away. Instead, the dispute now appears to center on questions relating to the interplay between the final inspection and approval of the shell structure in which the proposed restaurant is housed and the final inspec-

tion and approval of the restaurant itself. Bertucci's (represented in this action by Acierno's regular counsel) takes the position that it is entitled to have a CO issued permitting it to occupy the restaurant apart from whether or not Acierno has even requested all of the inspections the county says are necessary to complete the permitting process for the shell. In making this argument, it advances Acierno's position that the County has no legal basis to make the issuance of a CO on the shell dependent upon payment of the sewer charges and the completion of the final inspections identified in the County's November 5, 2003 letter.

Having reviewed the record and considered the parties' arguments, the court concludes that Bertucci's has not shown a basis for the entry of a mandatory preliminary injunction requiring that the County issue a CO permitting the operation of the restaurant. This is so even though the record supports a conclusion that the tenant space that Bertucci's seeks to occupy is fully compliant with all applicable rules and regulations. The only material obstacle to opening that space is the issuance of a CO on the building shell itself. Nevertheless, Bertucci's has not met its burden of showing that the building shell is also fully compliant or that the County has no good faith basis for refusing to issue a CO on it.

On the contrary, the record shows that the major sticking point between the County and Acierno (and CTC) is the County's insistence that a final plan review of the site is necessary before a CO can be issued. At oral argument, the parties discussed the fact that the shell building is some 30–40% *smaller* than the building

shown on the site plan. Evidently, Acierno wants to decouple that final plan review from the process of issuing a CO on the shell building, for fear that the County will take the position that it cannot do so until a new site plan is submitted and reviewed, a process that could take months.[1] However justified Acierno's concerns might be, this court cannot and should not intervene in the situation until the final plan review is done and the County's position in relation to the operation of Bertucci's is solidified. Nevertheless, as the court stated at oral argument, it is difficult to imagine that the fact that the building is somewhat smaller than it could have been is a basis for denying the issuance of at least a temporary CO until the site plan is corrected, if that is necessary. Certainly, such a deviation from plan poses no obvious health or safety issue that might cause the county to withhold the issuance of a temporary CO.

### III.

Briefly, the facts are as follows. CTC entered into a lease agreement with Bertucci's for the operation of a restaurant in a to-be-constructed, free standing building. On July 6, 2002, the County issued a building permit to 395 Associates, Inc., a business affiliated with Acierno, to construct a "shell," or exterior structure, for the Bertucci's restaurant at CTC's site (the "Shell Permit"). On July 10, 2003, the County issued a building permit to Crossection, Inc., a contractor hired by Bertucci's, to construct the tenant space for Bertucci's in the shell (the "Tenant Fit–Out Permit").

By the end of October, the work on the building was nearing completion. In the process of arranging for a final inspection

---

1. This fear is, no doubt, fueled by the fact that the County has, in other contexts, taken the position that the "unclean hands" provisions of the County Code prevent it from issuing any permits (including, presumably, a CO) on any project affiliated with Acierno due to other code violations by Acierno-related entities.

and applying for a CO, Bertucci's was told that the County did not have a complete file reflecting inspections on the shell. On or about October 30, 2003, Carmine Crisconi, who works for Acierno, went to the County Land Use office to make sure that the County's records were complete and, during the course of that day, was able to show County officials that many of the inspections in questions had been completed and approved. Nevertheless, by the time he left that day, Crisconi knew there remained a list of items that the County officials said needed to be done to bring the shell permit into compliance. In his deposition, Crisconi admitted knowing about two items in particular: a final plan review or inspection and the payment of a sewer bill. According to Frank Ruberto, Assistant Land Use Administrator, the list of missing items was somewhat longer. Exhibit R–1, marked at his deposition is a copy of the list Ruberto supplied to Crisconi on October 30.

Also on October 30, 2003, Joseph Caruso, a County building inspector came to the site at Bertucci's request in order to do a tenant fit-out inspection. That inspection was entirely satisfactory with the single exception that the Fire Marshall inspection had not yet taken place but was expected to occur later that day. Caruso suggested to Wayne Scott, a representative of Bertucci's, and Jim King, the Cross-section job supervisor, that they fax the results of the Fire Marshall's inspection to him and he would attempt to expedite the paperwork. According to Caruso's deposition, he also specifically told Scott and King that he knew there were "still issues on the shell of the building" and that they would "have to have the shell CO'd before you can have any fitout CO'd." [2]

While Caruso was still at the site, Crisconi arrived and reported that he had more or less worked out the shell permit issues in his meeting with County officials. At the time, Scott was very anxious to begin stocking the restaurant. In fact, supplies, including foodstuffs, were en route to the site. Before Caruso left, there was some discussion about the best way to expedite the final approval process. Caruso told the others that they could call him early the next morning.

When he arrived at work the next morning, Caruso found the Fire Marshall's report that had been faxed over to him late the previous afternoon. Caruso also found an e-mail from George Haggerty, Assistant Manager of the Land Use Department, to the entire department stating that all matters for action relating to CTC were to be sent to him through James Edwards, before "any findings, decisions, or approvals are granted." [3] He also found another e-mail, this one from Ruberto's secretary, advising that "no applications or inspections are to be done for 395 Associates or any Frank Acierno entity including Christiana Town Center and Bertucci[']s." [4] Thus, when the call came from King to discuss the issuance of a CO for the tenant space, Caruso told him that there were unresolved issues relating to the shell that were preventing the issuance of a CO.

Bertucci's was understandably concerned that the permitting process was coming off the tracks and immediately prepared a letter to the County requesting a temporary CO, sent by fax to the County at approximately 9 a.m. the same morning. The Bertucci's representatives then spent the day at the County offices but did not

2. Caruso Dep. at 13.

3. Ex. C–2 (Ex. 9 to Pl. Op. Br.).

4. Ex. C–3 (Ex. 9 to Pl. Op. Br.).

succeed in obtaining a CO. This lawsuit was filed two business days later.

On November 5, 2003, Haggerty wrote to CTC listing the items that remained open on the shell permit and the tenant fit-out permit. On November 10, 2003, Haggerty wrote to Crossection, Inc., explaining the reasons for denying Bertucci's request for a temporary CO. Principally, this letter bases the refusal to issue a temporary CO on the failure of the building owner to obtain a CO for the shell. By the time the argument took place on November 12, 2003, the remaining issues relating to the shell CO were the need for a record plan inspection and the payment of certain sewer fees the County said were owing. The parties also disagreed over whether the County Code contemplated the issuance of one or two COs.

### IV.

■ A preliminary injunction is an extraordinary form of relief that will be granted only where a party demonstrates: (1) a reasonable probability of success on the merits at a final hearing; (2) that the failure to issue a preliminary injunction will result in immediate and irreparable harm; and (3) that the harm to the plaintiffs if relief is denied will outweigh the harm to the defendants if relief is granted.[5] The extraordinary remedy "is granted only sparingly and only upon a persuasive showing that it is urgently necessary, that it will result in comparatively less

harm to the adverse party, and that, in the end, it is unlikely to be shown to have been issued improvidently."[6] The standard for issuing a mandatory preliminary injunction is, for obvious reasons, even more demanding. As stated in a leading treatise on practice in this court, "the Court of Chancery has consistently applied an exacting standard, requiring that an applicant seeking mandatory preliminary injunctive relief 'clearly establish the legal right he seeks to protect or the duty he seeks to enforce.'"[7] In this case, any order directing the County to issue a CO to Bertucci's could be revoked, if, after a full evidentiary hearing, the court concluded that the relief was unwarranted. Thus, the court will not apply a full summary judgment standard of review, although that standard is appropriate where the relief sought is essentially final in nature.[8]

■ The court has little difficulty in concluding that Bertucci's has not met its burden of clearly establishing its right to the immediate issuance of a CO allowing its use of the building as a restaurant. The reason for this, briefly, is that CTC has not done all of the things the County contends are necessary for the issuance of a CO relating to the building shell. The only question is whether the court should ignore or excuse CTC's and Acierno's failure to act and, instead, rule as a matter of law that the County cannot condition the issuance of a CO on CTC's compliance with its demands. The court concludes that it should not.

**5.** *See, e.g., SI Mgmt. L.P. v. Wininger,* 707 A.2d 37, 40 (Del.1998); *Revlon v. MacAndrews & Forbes Holdings, Inc.,* 506 A.2d 173, 179 (Del. 1986); *In re Anderson, Clayton S'holders Litig.,* 519 A.2d 694, 698 (Del.Ch.1986); *see also In re IXC Communications, Inc. S'holders Litig.,* 1999 WL 1009174, at *4 (Del.Ch. Oct. 27, 1999)(stating "[t]his [preliminary injunctive] relief is extraordinary and the test is stringent").

**6.** *Cantor Fitzgerald, L.P. v. Cantor,* 724 A.2d 571, 579 (Del.Ch.1998).

**7.** Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate And Commercial Practice In The Delaware Court Of Chancery,* § 10–2(b)[6] at 10–39 (2001), quoting *Stahl v. Apple Bancorp, Inc.,* 579 A.2d 1115, 1120 (Del.Ch.1990).

**8.** *Stahl,* 579 A.2d at 1120–21.

The County issues COs pursuant to New Castle County Code § 6.03.018(A), which provides as follows:

*Use and Occupancy.* No building structure shall be used or occupied, in whole or in part, and no change in the existing use or occupancy classification of a building or structure or portion thereof shall be made until the Code Official has issued a certificate of occupancy or use as provided herein.

A certificate of occupancy is issued pursuant to New Castle County Code § 6.03.018(C) only after the following items are completed:

*Certificate Issued.* Upon completion of the final inspection and correction of all outstanding violations and discrepancies of this Chapter, the approved plans, the permits, or Chapter 40 of the *New Castle County Code* are corrected [sic] and all directives of the Code Official are satisfied, the Code Official shall issue a certificate of occupancy indicating the completion of the work for which the permit was issued.

In cases where something prevents the issuance of a final CO, the County has the power to issue a temporary CO, where no issue of health or safety is involved, in accordance with New Castle County Code § 6.03.018(D), as follows:

*Temporary Occupancy.* The Code Official is authorized to issue a temporary certificate of occupancy before completion of the entire work covered by the permit, provided that such portion or portions shall be occupied safely.

The parties devote much time and energy arguing about whether the County Code requires one or two COs for the operation of the Bertucci's restaurant. The issue is inconsequential. If only one CO is required, it certainly cannot be issued until both the building shell and the tenant space pass final inspection and otherwise satisfy the above-quoted requirements of New Castle County Code § 6.03.018(C). If, instead, both Bertucci's and CTC need to obtain COs, the issuance of a CO to Bertucci's for its tenant space is necessarily dependent upon the prior existence of a CO covering the building shell. In either case, logic dictates that Bertucci's cannot occupy its space and operate a restaurant until the building itself satisfies subsection (C), quoted above.

As already discussed, the record shows that, by October 30, CTC and Acierno knew the County's position that there were inspections remaining and sewer bills to pay. Since this lawsuit was filed, CTC has taken steps to satisfy some of the items identified in the County's letter of November 5. For instance, a certificate of inspection of the HVAC units on the roof of the building shell was handed up in open court on November 12. Nevertheless, CTC and Acierno continue to resist the County's demand that they make a request for the final plan inspection and refuse to pay certain sewer bills, even under protest. By this stratagem, CTC and Acierno evidently believe they can force this court to rule as a matter of law that neither the final plan inspection nor the payments demanded is a proper condition to the issuance of a CO on the shell.

The court declines to rule on these questions in the abstract posture in which they are presented. To begin with, the County's position is neither obviously mistaken nor apparently advanced in bad faith. On the contrary, a plain reading of subsection (C), quoted above, supports the view that the requirement of a final plan review is within the ambit of that statute. Similarly, it is not readily apparent why the issuance of a CO should not be conditioned on the payment of outstanding sewer charges. Thus, the right Bertucci's insists upon is not clearly established on this record.

 

Even if its legal position were stronger, however, the posture in which the claims are presented is not an appropriate one in which to adjudicate the issues. There is, quite simply, no good reason why CTC and Acierno should not be required to ask the County to conduct the final plan review (and whatever other inspections may be necessary) and to pay the sewer fees demanded, under protest or not. These simple steps could well resolve this dispute and result in the issuance of a CO permitting the operation of the restaurant without the need for any intervention by this court. If not, then this court or some other court can determine whether the County's refusal to issue a CO conformed to the law on the basis of an "as applied" factual record.

These observations also support a conclusion that Bertucci's has not shown the likelihood of imminent irreparable harm. Such a showing might be made if, as CTC and Acierno apparently fear, the County refuses to issue a CO permitting operation of the restaurant simply because the building is smaller than that shown on the approved plan. At this stage of the proceedings, however, there is no reason to expect that to happen. Certainly, there would be no reason to deny the issuance of a temporary CO in that case, since the discrepancy between the building and the plan would not raise any concern about the safe operation of the restaurant.[9] There is presently no basis on which the court could conclude that irreparable harm is threatened.[10]

---

9. The final site plan review, by contrast, does address issues that could affect the safety of the premises, such as the size and layout of the parking facilities adjacent to the restaurant and similar site planning issues.

10. The court finds it unnecessary to address the other issues raised by the parties in their

## V.

For the foregoing reasons, the plaintiff's motion for a preliminary injunction shall be, and hereby is, DENIED. IT IS SO ORDERED.

briefs, other than to note that, as the applicant on the tenant fit-out permit, and the lessee of the restaurant premises, Bertucci's has such a substantial interest in the outcome of this litigation to justify its standing to bring this suit.